IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MCR OIL TOOLS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:19-cv-2536-E |
| | § | |
| WIRELINE WELL SERVICES TUNISIA, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Defendant has filed a Motion to Dismiss on Forum Non Conveniens Grounds (Doc. No. 19). Defendant asserts Tunisia is the more appropriate forum for this case. Plaintiff responds that Defendant's motion is moot because Plaintiff has exercised its contractual right to arbitrate the parties' dispute. Plaintiff has filed a Motion to Compel Arbitration and Stay of Case (Doc. No. 28). For reasons that follow, the Court denies both motions.

**Background**

Plaintiff MCR Oil Tools, LLC initiated this lawsuit in state court in Dallas County, Texas on September 27, 2019, by filing its "Original Petition, Request for Temporary Restraining Order and Application for Temporary and Permanent Injunctive Relief." Plaintiff is a Texas limited liability company, and Defendant, Wireline Well Services Tunisia, is a Tunisian corporation with its principal place of business in Tunisia. Defendant timely removed the case to this Court on the basis of diversity jurisdiction. Both Plaintiff's state court pleading and its amended complaint filed after removal allege that venue is proper in Dallas County pursuant to Chapter 171 of the Texas Civil Practice and Remedies Code, which provides that "[i]f the agreement to arbitrate

1

provides that the hearing before the arbitrators is to be held in a county in this state, a party must file the initial application with the clerk of the court of that county." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.096(b). Plaintiff further alleges:

> [I]n the contract at issue in the case, the arbitration provision states that arbitration shall be held in Dallas, Texas. Therefore, venue is proper in Dallas County. The arbitration provision states further that MCR may apply to "any court of competent jurisdiction to preserve its intellectual property rights under this Agreement and [to] for that purpose obtain any injunctive relief."

As alleged in the amended complaint, Plaintiff works in the oilfield industry; it "researches, invents, designs, develops, manufactures and sells oilfield tools, products, equipment and accessories." To protect its intellectual property, Plaintiff requires its customers to enter into license agreements. Plaintiff and Defendant entered into a license agreement on December 21, 2018.

Non-party Specialised Oilfield Services, Ltd. (SOS) is a former licensee of Plaintiff and provided Plaintiff's tools to companies around the world. SOS's main business hub was in Aberdeen, Scotland. At the end of 2018, SOS began liquidation proceedings, similar to U.S. bankruptcy proceedings. SOS was in possession of Plaintiff's tools at various locations around the world. Plaintiff appointed another one of its licensees, Red Kite Oilfield Services, to take possession of SOS inventory.

Plaintiff's allegations in this lawsuit center on Defendant's lack of cooperation in returning the SOS inventory in its possession. Plaintiff alleges that Defendant has returned only about 30% of the SOS inventory in Defendant's possession and that most of what it did return was used or damaged. Plaintiff alleges it terminated the license agreement with Defendant on September 4, 2019, because Defendant was not "cooperating in good faith in returning the SOS Inventory." According to Plaintiff, upon termination of the license agreement, Defendant is required to, among

other things, return all of Plaintiff's tools within 60 days.  Plaintiff alleges Defendant refuses to return the MCR tools in its possession and has attempted to use them without permission.  Plaintiff further asserts it learned Defendant bid on pipe recovery operations in Tunisia that would include the use of MCR tools in violation of the license agreement.

Plaintiff asserts claims for breach of contract, specific performance, declaratory judgment, and injunctive relief.  It seeks a permanent injunction requiring Defendant to immediately return MCR tools in its possession, among other things.  Defendant has filed a breach of contract counterclaim.

Prior to removal, the state court judge entered an agreed temporary injunction upon the joint request of the parties. The temporary injunction enjoins Defendant from using, moving, or disposing of any licensed products or MCR tools in its possession, custody, or control.  It also required Defendant to produce a detailed inventory of licensed products and MCR tools it received from Red Kite or Plaintiff and "job tickets" or "customer sign-offs" for every oilfield service job Defendant performed since December 6, 2018.

Defendant moved to dismiss on forum non conveniens grounds on May 21, 2020.  Plaintiff filed its motion to compel arbitration on July 7, 2020, over nine months after it filed suit.

**Arbitration**

The Court first addresses Plaintiff's motion to compel arbitration.  Plaintiff asks the Court to stay the lawsuit and compel arbitration of all claims.  Plaintiff argues the license agreement between it and Defendant contains a mandatory arbitration agreement and requires arbitration of all claims.  Section 9.06 of the agreement provides in relevant part:

> Section 9.06   Disputes, Arbitration and Applicable Law:  Any dispute, controversy, or claim arising out of or relating to this Agreement, or the breach, termination or invalidity thereof, shall be finally settled by arbitration in accordance

>with the UNCITRAL Arbitration Rules (2010). The appointing authority, should one prove necessary, shall be the American Arbitration Association, which shall otherwise have no role in the proceedings. The place of arbitration shall be Dallas, Texas. . . . Notwithstanding the foregoing, a Party may apply to any relevant government agency or any court of competent jurisdiction to preserve its intellectual property rights under this Agreement and to for that purpose to [sic] obtain any injunctive relief to which it may be entitled, either against Licensee or against a non-Party; provided however, that no such agency or court shall have the right or power to award contractual damages under this Agreement or to enjoin or impede the arbitral proceedings.

Defendant contends Plaintiff has waived its right to arbitrate. Defendant argues Plaintiff substantially invoked the judicial process and caused prejudice to Defendant. Plaintiff responds that it did not waive its right to enforce the arbitration agreement. Plaintiff argues the arbitration agreement expressly permitted it to file suit to preserve its intellectual property rights and to obtain any injunctive relief to which it may be entitled. Plaintiff says it was hopeful the case could be resolved through discussion with opposing counsel or through mediation. Plaintiff asserts it has not initiated any formal discovery or sought affirmative relief from the Court except for its Amended Complaint and Motion to Compel Arbitration. Plaintiff contends its conduct has not been inconsistent with the assertion of its right to arbitrate.

There is a strong presumption against finding a waiver of arbitration, and the party claiming that the right to arbitration has been waived bears a heavy burden. *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 344 (5th Cir. 2004). Waiver will be found, however, where the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party. *Id.* To invoke the judicial process the party must, at the very least, engage in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration. *Id.*

In an unpublished opinion, the Fifth Circuit recently noted that arbitration waiver is usually asserted against defendants, stating "It is unusual for the plaintiff who filed the court action to later want to pursue arbitration." *Sabatelli v. Baylor Scott & White Health*, 832 Fed. App'x 843, 848 (5th Cir. 2020). When the plaintiff is the reason there is a lawsuit in the first place, the first requirement for implied waiver will generally be satisfied. *Id.*

It is clear to the Court that Plaintiff substantially invoked the judicial process. Although the arbitration clause in the parties' agreement allows a party to seek injunctive relief to preserve intellectual property rights, Plaintiff's pleadings seek more than injunctive relief. From the outset, Plaintiff brought a breach of contract claim and sought monetary damages and requested a jury trial. Plaintiff's complaint does not indicate that it is "subject to" the arbitration provisions of the parties' contract. Nor does its original answer to the counterclaim. *Cf. U.S. for Use & Benefit of Orleans Elec. Constr. Co. v. AMC Mech. Contractors, Inc.*, 709 F. Supp. 694, 695 (M.D. La. 1989). Plaintiff did mention arbitration in its First Amended Answer, which was filed in June 2020, about three weeks before it moved to compel. Further, in its status report order the Court asked the parties what form of alternative dispute resolution would be most appropriate. The parties' joint response was that mediation would be the most appropriate form. There was no mention of arbitration. Only after Defendant moved to dismiss on forum non conveniens grounds did Plaintiff assert its right to arbitration. The first requirement for waiver of the right to arbitration has been met.

The next question is whether there has been prejudice to Defendant. In addition to invocation of the judicial process, the party opposing arbitration must demonstrate prejudice before a Court can find waiver of the right to arbitrate. *Forby v. One Techs., L.P.*, 909 F.3d 780, 785 (5th Cir. 2018). Prejudice refers to the inherent unfairness in terms of delay, expense, or damage to a

party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue. *Id.* Three factors are particularly relevant to the prejudice determination: 1) whether discovery occurred relating to arbitrable claims; 2) the time and expense incurred in defending against a motion for summary judgment; and 3) a party's failure to timely assert its right to arbitrate. *Petroleum Pipe Americas Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 480 (5th Cir. 2009).

Plaintiff argues that Defendant has not suffered any prejudice. It asserts the formal discovery process has not begun, although it acknowledges that some informal discovery has taken place. No dispositive motions have been filed. It argues Defendant's expenses in this case are largely self-inflicted, i.e., a result of its motion to dismiss.

Delay in asserting the right to arbitrate alone will not result in waiver. *Forby*, 909 F.3d at 786. However, such a delay does bear on the question of prejudice and may, along with other considerations, require a court to conclude that waiver has occurred. *Id.* When a party fails to demand arbitration and engages in activity inconsistent with its intent to arbitrate, the party later opposing a motion to compel may more easily show that its position has been prejudiced. *Id.*

Plaintiff filed this suit in state court on September 27, 2019, and it waited over nine months before filing a motion to compel arbitration. In the interim, Plaintiff submitted a joint report to this Court after removal, filed an answer and amended answer to Defendant's counterclaim, and amended its complaint. It did not file its motion to compel arbitration until after Defendant moved to dismiss and filed a reply in support of its motion to dismiss. Defendant also points out that Plaintiff designated its experts without mentioning the arbitration clause in the parties' agreement. Defendant argues that it has incurred expenses in answering, removing the case, participating in the preparation of the joint status report, designating its own experts, and filing the motion to

6

dismiss on forum non conveniens grounds. Defendant submits that it has incurred over $150,000 in costs related to this lawsuit. In addition, Defendant argues that it is in a weaker legal position because Plaintiff has obtained a preview of its litigation strategy.

Given the fact that Plaintiff initiated this lawsuit and delayed nine months in moving to compel arbitration, the Court concludes that Defendant has shown sufficient prejudice as a result of Plaintiff's failure to promptly demand arbitration and activity inconsistent with its intent to arbitrate. The Court concludes Plaintiff has waived its right to arbitrate and denies the motion to compel arbitration.

## Forum Non Conveniens

The Court turns to Defendant's motion. Defendant asks the Court to dismiss the case on grounds of forum non conveniens. It argues that Tunisia is the more appropriate forum.

A federal court sitting in diversity applies the federal law of forum non conveniens in deciding a motion to dismiss in favor of a foreign forum. *Sierra Frac Sand, L.L.C. v. CDE Global Ltd.*, 960 F.3d 200, 203 (5th Cir. 2020). Forum non conveniens is a common-law doctrine that promotes convenient trials. *Id.* Under the doctrine, a court may relinquish its jurisdiction through dismissal of a case so that the case may be adjudicated elsewhere. *Id.* To determine whether to dismiss a case under forum non conveniens, a district court first assesses whether there is an adequate and available alternative forum. *Id.* Then the court conducts a balancing test based on various private-interest and public-interest factors. *Id.* The defendant bears the burden of showing that these factors weigh in favor of dismissal. *Id.* Ordinarily, unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed. *Id.*; *see Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007) ("A defendant invoking *forum non conveniens* ordinarily bears a heavy burden in opposing the plaintiff's chosen forum.").

Plaintiff asserts that Defendant's motion is untimely. A defendant must assert a motion to dismiss for forum non conveniens within a reasonable time after the facts or circumstances which serve as the basis for the motion have developed and become known or reasonably knowable to the defendant. *In re Air Crash Disaster*, 821 F.2d 1147, 1165 (5th Cir. 1987). Untimeliness does not effect a waiver; however, it should weigh heavily against the granting of the motion because a defendant's dilatoriness promotes and allows the very incurrence of costs and inconvenience the doctrine is meant to relieve. *Id.*

A foreign forum is available when the entire case and all the parties can come within that forum's jurisdiction. *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 796 (5th Cir. 2007). A foreign forum is adequate when the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy all the benefits of an American court. *Id.* Adequacy does not require that the alternative forum provide the same relief as an American court. *Id.* The substantive law of the foreign forum is presumed to be adequate unless the plaintiff makes some showing to the contrary, or unless conditions in the foreign forum made known to the court, plainly demonstrate that the plaintiff is highly unlikely to obtain basic justice there. *Id.*

Defendant argues that Tunisia is an available and adequate forum. Defendant asserts Tunisian law provides Plaintiff with adequate causes of action and remedies. In support of this assertion, Defendant provided the declaration of a solicitor practicing law in Tunisia, Zoubeir Frikha. At his law firm, Frikha leads a "litigation team in relation to civil, corporate and criminal business law." Regarding Plaintiff's causes of action for breach of contract, specific performance, and declaratory judgment, Frikha's declaration states that there are causes of action equivalent to those available under Tunisian law and a Tunisian forum could provide Plaintiff with adequate remedies as to those claims. Frikha also states that Tunisian courts can grant injunctive relief

8

similar to that sought by Plaintiff here. But he states that "any application for injunctive relief related to movable assets" must be made before a Tunisian court. He indicates that injunctive relief ordered by a foreign court is unenforceable in Tunisian courts pursuant to Article 11 of the Tunisian Code of Private International Law. There is no trial by jury for civil cases in Tunisia.

Plaintiff responds that Tunisia is not adequate forum given the facts of this case, but it has not provided the Court with an expert's opinion on the issue. The Court notes that its research did not turn up any cases addressing the issue of whether Tunisia is an adequate forum under the doctrine of forum non conveniens. For purposes of resolving Defendant's motion, the Court will assume without deciding that Tunisia is an adequate forum.

The next step in the analysis is a balancing of the private interest factors. These factors include: 1) the relative ease of access to sources of proof; 2) the availability of compulsory process for attendance of unwilling, and the costs of obtaining attendance of willing, witnesses; 3) probability of an opportunity to view the premises, if viewing would be appropriate to the action; and 4) other factors affecting the ease, speed, and expense of trial or the enforceability of a judgment if obtained. *DTEX, LLC*, 508 F.3d at 794.

Defendant asserts that all private interest factors weigh in its favor. First, it contends ease of access to sources of proof weighs in its favor because the majority of the witnesses necessary to its defense are Tunisian citizens and because most, if not all, of the relevant documents are located there. Documents in Arabic or French would be costly to obtain and translate in the current forum. In additional, the tools at issue are allegedly located in Tunisia. Defendant's brief incorporates a list of 22 witnesses, 12 of whom are located in Tunisia. The others are located in Scotland and Texas.

Next, regarding the attendance of witnesses, it contends more than half of the witnesses in the case are in Tunisia and are beyond the subpoena power of this Court, which will prejudice Defendant. According to Defendant, Tunisian courts can compel nonparties in Tunisia to testify or produce evidence. Because the majority of witnesses reside and work in Tunisia, securing their attendance here would be more expensive than if the case was handling in Tunisia.

Defendant also contends the third factor weighs in favor of dismissal. Defendant has its office and warehouse in Tunisia. Plaintiff maintains Defendant wrongfully possesses its tools. Thus physically inspecting Defendant's business will resolve this allegation.

Defendant argues that other practical concerns, the fourth factor, favor Tunisia. It mentions the expense of bringing witnesses to Texas. It asserts bringing Scottish witnesses to Tunisia is less expensive than bringing them to Texas. It also cites the ability to have live witnesses. And it contends any Texas judgment is "more than likely unenforceable" in Tunisia, as stated by Frikha in his declaration. Tunisian courts cannot enforce foreign judgments issued by a country that does not observe Tunisia's reciprocity rule for enforcement of judgments.

Plaintiff disputes that the private interest factors favor dismissal. It notes that some of the witnesses Defendant presents as material witnesses were not material enough to be disclosed as likely to have discoverable information as required by Rule 26(a)(1). Plaintiff asserts that key witnesses to establish Defendant's liability are located in Texas. Ultimately, according to Plaintiff, the suit centers around the parties' contract and key witnesses will be testifying about contract-related issues. All but one of the identified Tunisian witnesses are Defendant's employees. *See Sydow v. Acheson & Co.*, 81 F. Supp. 2d 758, 769 (S.D. Tex. 2000) (expressing confidence that foreign defendant will be able to ensure attendance of its employees at trial or otherwise present their testimony). And most of the proof of the breach lies in correspondence between the parties,

10

all of which is in Plaintiff's possession or which may easily be transported here. Plaintiff acknowledges that some important witnesses are in Tunisia and there will be costs of international travel. However, trial in Tunisia merely shifts the inconvenience from Defendant to Plaintiff.

Regarding compulsory process for nonparties or unwilling parties, Plaintiff asserts that, as stated in Frikha's declaration, neither this Court nor a Tunisian court have the ability to compel an unwilling foreign witness to appear at trial or to give deposition testimony except through the procedures of the Hague Convention. Thus, it asserts this issue presents a challenge in either forum and does not weigh in favor of dismissal.

Plaintiff also contends it has not requested an inspection of any of Defendant's businesses. Plaintiff notes that its facility in Texas may need to be inspected too. In addition, Plaintiff notes that Defendant's discussion of other factors largely restates the factors already discussed.

After considering these private interest factors, the Court concludes Defendant has not met its burden to demonstrate that the balance of those factors strongly weigh in its favor. There will be inconvenience for the parties in either Texas or Tunisia. The doctrine of forum non conveniens should not be invoked simply to shift the inconvenience from one party to the other. *See id.* In addition, the Court finds it significant that Defendant agreed to arbitration in Texas, but now asserts it is not a convenient forum for trial. Further, Defendant filed the forum non conveniens motion almost eight months after Plaintiff filed suit. To excuse the delay, it argues that when Plaintiff amended its complaint in May of 2020, circumstances changed and it became apparent Plaintiff's claims related exclusively to conduct that occurred in Tunisia. Plaintiff's amended complaint dropped a focus on trade secrets, but from the inception of the law suit Plaintiff alleged that Defendant has refused to return the tools in its possession. Defendant's delay in filing the motion to dismiss weighs against it.

Turning to the public interest factors, they include: 1) the administrative difficulties flowing from court congestion; 2) the local interest in having localized controversies resolved at home; 3) the interest in having the trial of a diversity case in a forum that is familiar with the law that must govern the action; 4) the avoidance of unnecessary problems in conflicts or law or in the application of foreign law; and 5) the unfairness of burdening citizens in an unrelated forum with jury duty. Defendant argues two of these. It contends Tunisia's interest in regulating the conduct of Tunisian companies outweighs Texas's interest in providing a forum for its residents to bring claims. Defendant also argues it would be unfair to ask Texans to serve as jurors in a case centered in Tunisia.

The Court agrees with Plaintiff that these public interest factors do not favor dismissal. The Court finds that both Texas and Tunisia have a localized interest in the parties' controversy and one does not strongly outweigh the other. It would not be unfair to ask a Texas jury to decide the matter. The Court concludes that the balancing of all private and public interest factors does not strongly favor Defendant. The Court will not overturn Plaintiff's choice of forum. Defendant's motion to dismiss is denied.

**SO ORDERED.**

Signed March 22, 2021.

_____
ADA BROWN
UNITED STATES DISTRICT JUDGE