IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MCR OIL TOOLS, LLC, | § | |
| | § | |
| Plaintiff/Counter-Defendant, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:19-cv-2536-E |
| | § | |
| WIRELINE WELL SERVICES TUNISIA, | § | |
| | § | |
| Defendant/Counter-Plaintiff. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff's Motion to Dismiss and Alternative Motion to Stay and Motion for More Definite Statement. (Doc. 52). Plaintiff seeks dismissal of Defendant's counterclaim for fraudulent inducement. Specifically, Plaintiff argues Defendant has failed to state a claim because its counterclaim is preempted by the Hazardous Materials Transportation Act and associated regulations and because it has failed to meet the heightened pleading standard in Federal Rule of Civil Procedure 9(b). Alternatively, Plaintiff requests the case be stayed pursuant to the primary jurisdiction doctrine. For reasons that follow, the Court denies the motion.

**Background**

Plaintiff/Counter-Defendant MCR Oil Tools, LLC ("MCR") initiated this lawsuit in state court in Dallas County, Texas against Tunisian corporation Wireline Well Services Tunisia ("WWS"). WWS timely removed the case to this Court on the basis of diversity jurisdiction. MCR works in the oilfield industry; it "researches, invents, designs, develops, manufactures and sells oilfield tools, products, equipment and accessories." Its tools are generally thermite-based tools—pipe cutters and torches fueled by a solid combustible charge—used to cut, perforate, and

1

consume oil well pipe downhole. To protect its intellectual property, MCR requires its customers to enter into license agreements. WWS is an oilfield service company that provides wireline and well intervention services to the oil and gas industry in North Africa. WWS uses tools supplied by manufacturers like MCR. MCR and WWS entered into a license agreement on December 21, 2018.

This dispute began due to WWS's alleged lack of cooperation in returning certain MCR tools in its possession. MCR alleges WWS returned only about 30% of certain inventory and that most of what it did return was used or damaged. MCR alleges that it terminated the license agreement with WWS on September 4, 2019, because of WWS's failure to cooperate in good faith in returning the inventory. According to MCR, upon termination of the license agreement, WWS was required to return *all* of MCR's tools within 60 days. MCR alleges WWS refuses to return the MCR tools in its possession and has attempted to use them without permission. MCR further asserts it learned WWS bid on pipe recovery operations in Tunisia that would include the use of MCR tools in violation of the license agreement. MCR asserts claims for breach of the license agreement, specific performance, declaratory judgment, and injunctive relief.

WWS originally asserted one counterclaim—breach of the license agreement. In its Second Amended Answer, Affirmative Defenses and Counterclaims, WWS added a counterclaim for fraudulent inducement. Only the fraudulent inducement claim is involved here. In connection with that claim, WWS makes the following allegations. MCR claims its tools utilize "Class 4 non-explosive thermite-based fuel to perforate, consume and cut oil well pipes downhole." MCR represents that the pyrotechnic fuel used in its tools is a flammable solid which allows MCR to ship its tools by all modes of transport. MCR represents that its fuel is "non-explosive" and its tools are "the safest and most efficient" tools on the market. WWS relied on representations MCR

2

made in its marketing documents and on its website in entering into the license agreement with WWS.  The pyrotechnic fuel actually used in MCR's tools is "an undisclosed and misclassified dangerous explosive which could severely injure handlers, harm the environment, and cause catastrophic damage during transportation."  MCR fraudulently induced WWS to enter into the license agreement based upon deliberate misrepresentations about the true nature of the pyrotechnic fuel used in its tools, specifically that the fuel is "non-explosive."  WWS would not have entered into the license agreement if it had known the truth.

In response to WWS's second amended answer and new counterclaim, MCR filed a motion to dismiss.  MCR did not amend its answer to WWS's counterclaims.  MCR makes the following arguments regarding the fraudulent inducement counterclaim:  (1) WWS's claim is preempted pursuant to the Hazardous Materials Transportation Act (HMTA) and associated rules, regulations, and orders of the United States Department of Transportation (DOT) and Pipeline and Hazardous Materials Safety Administration (PHMSA); (2) alternatively, the Court should stay this case pursuant to the primary jurisdiction doctrine; and (3) WWS's claim should be dismissed for failure to meet the heightened pleading standard in Rule 9(b).

### Federal Preemption

MCR first contends that WWS has failed to state a claim for fraudulent inducement because its state law claim is preempted.  MCR asserts the counterclaim is expressly preempted by language in the HMTA and also preempted by implication based on conflict preemption.

Federal preemption is an affirmative defense that a defendant must plead and prove.  *Simmons v. Sabine River Auth. La.*, 732 F.3d 469, 473 (5th Cir. 2013); *see* FED. R. CIV. P. 8(c).  Here, MCR has not raised the affirmative defense of preemption in an answer; it raised the issue for the first time in its motion to dismiss.  The rule in the Fifth Circuit is that affirmative defenses

may be raised by motion to dismiss provided that the complaint shows affirmatively that a claim is barred by the affirmative defense. *Parra v. Mountain States Life Ins. Co. of Am.*, 52 F.3d 1066, at *2 (5th Cir. 1995) (citing *Herron v. Herron*, 255 F.2d 589, 593 (5th Cir. 1958)).

The Court can determine MCR's argument about express preemption under the HMTA based on the pleadings alone. However, its argument about conflict preemption is not established on the face of WWS's pleading. It is based on allegations that are not part of the pleadings. As the basis for its conflict preemption argument, MCR asserts that in 2021, a DOT inspector conducted a surprise inspection at MCR's offices after an anonymous complaint about the classification of its tools. The inspector informed MCR that the PHMSA would be making a final resolution of the complaint. MCR asserts the PHMSA has exclusive regulatory oversight over classification, safety, and operations of hazardous material and is authorized to require corrective action on MCR's part if necessary. MCR argues WWS's claim is preempted because it interferes with the PHMSA's regulatory scheme. The Court will not permit MCR to raise its conflict preemption affirmative defense for the first time in the motion to dismiss. The motion to dismiss on the basis of conflict preemption is denied.

The Court turns to MCR's argument about the express preemption provision in the HMTA. The HMTA was enacted in 1975 to develop a national regulatory scheme for the transportation of hazardous substances. It is meant "to protect against risks to life, property, and the environment that are inherent in the transportation of hazardous material in intrastate, interstate, and foreign commerce." 49 U.S.C. § 5101. As part of that goal, the statute provides for administrative, civil, and criminal penalties. *Buono v. Poseidon Air Sys.*, No. 17-CV05915 (PHM), 2022 WL 744050, at *4 (S.D.N.Y. March 11, 2022) (citing 49 U.S.C. §§ 5121-5124).

By virtue of the Supremacy Clause, it is a fundamental principle of the Constitution that Congress has the power to preempt state law. *Planned Parenthood of Houston & Se. Tex. v. Sanchez*, 403 F.3d 324, 336 (5th Cir. 2005). Preemption doctrine requires an examination of Congressional intent. *Id.* Federal regulations have no less preemptive effect than federal statutes. State action may be preempted by federal law in three ways: (1) by express language in a congressional enactment, (2) by implication from the depth and breadth of a congressional scheme that occupies the legislative field, or (3) by implication because of a conflict with a congressional enactment. *Id.* When a federal law contains an express preemption clause, courts do not invoke any presumption against preemption, but instead "focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent." *Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582, 594 (2011). The party asserting federal preemption has the burden of persuasion. *Ezell v. Kansas City S. Ry. Co.*, 866 F.3d 294, 298 (5th Cir. 2017).

The HMTA's express preemption provision is found in § 5125:

> (a) **General**.–Except as provided in subsections (b), (c), and (e) of this section and unless authorized by another law of the United States, a requirement of a State, political subdivision of a State, or Indian tribe is preempted if –
> (1) complying with a requirement of the State, political subdivision, or tribe and a requirement of this chapter, a regulation prescribed under this chapter, or a hazardous materials transportation security regulation or directive issued by the Secretary of Homeland Security is not possible; or
> (2) the requirement of the State, political subdivision, or tribe, as applied or enforced, is an obstacle to accomplishing and carrying out this chapter, a regulation prescribed under this chapter, or a hazardous materials transportation security regulation or directive issues by the Secretary of Homeland Security.

49 U.S.C. § 5125(a). The exception found in subsection (b) provides that a law, regulation, order, or other requirement of a State, political subdivision of a State, or Indian tribe about any of the following subjects, that is not substantively the same as a provision of this chapter, a regulation

5

prescribed under this chapter, or a hazardous materials transportation security regulation or directive issued by the Secretary of Homeland Security, is preempted. 49 U.S.C. § 5125(b). The subjects listed are: (1) the designation, description, and classification of hazardous material; (2) the packing, repacking, handling, labeling, marking, and placarding of hazardous material; (3) the preparation, execution, and use of shipping documents related to hazardous material and requirements related to the number, contents, and placement of those documents; (4) the written notification, recording, and reporting of the unintentional release in transportation of hazardous material and other written hazardous materials transportation incident reporting involving State or local emergency responders in the initial response to the incident; and (5) the designing, manufacturing, inspecting, marking, maintaining, reconditioning, repairing, or testing a package, container, or packaging component that is represented, marked, certified, or sold as qualified for use in transporting hazardous material in commerce. *Id.*

MCR's brief italicizes four of the five subjects described—all but number four above. MCR does not provide any substantive analysis regarding whether WWS's fraudulent inducement claim involves any of the listed subjects. Nor does MCR cite any cases in which a court has held that state tort claims were expressly preempted by the HMTA. The HMTA and its accompanying regulations are intended to regulate the shipment or transport of hazardous materials in intrastate, interstate, and foreign commerce. In its fraudulent inducement counterclaim, WWS asserts that MCR misrepresented in marketing materials and on its website that its tools did not contain hazardous materials and WWS relied on those representations in entering into a contract with MCR. WWS's tort claim does not involve state regulation of the shipment or transport of hazardous materials. There is no indication in the HMTA's express preemption provision that Congress intended to preempt common law state tort remedies arising out of a consumer's end use

6

of a hazardous material. *Lyall v. Leslie's Poolmart*, 984 F. Supp. 587, 598 (E.D. Mich. Oct. 31, 1997) (citing *Olson v. Prosoco, Inc.*, 522 N.W.2d 284, 293 (Iowa 1994)) (product liability claims of plaintiff who was injured opening container of chlorine tablets for swimming pool against manufacturer of container were not preempted by HMTA). Nothing in the express preemption provision in the HMTA involves marketing of or representations about allegedly hazardous materials. The Court concludes MCR has failed to meet its burden to establish express preemption.

### Primary Jurisdiction Doctrine

MCR argues alternatively that in the event the Court determines WWS's counterclaim is not preempted, the Court should stay this case pursuant to the primary jurisdiction doctrine. MCR contends the PHMSA is conducting an investigation into whether MCR's fuel should be classified as an explosive. According to MCR, allowing the PHMSA to conclude its investigation would promote uniformity and advance the policy objectives of the DOT.

The doctrine of primary jurisdiction is a doctrine of judicial abstention whereby a court which has jurisdiction over a matter nonetheless defers to an administrative agency for an initial decision on questions of fact or law withing the peculiar competence of the agency. *Occidental Chem. Corp. v. La. Pub. Svc. Comm'n*, 810 F.3d 299, 309 (5th Cir. 2016). No fixed formula exists for applying the doctrine of primary jurisdiction. *Id.* In every case, the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation. *Id.* Courts should be reluctant to invoke the doctrine of primary jurisdiction, which often, but not always, results in added expense and delay to the litigants where the nature of the action deems the application of the doctrine is inappropriate. *Id.* The primary jurisdiction doctrine requires a district court to balance the assistance potentially provided by an agency's specialized expertise against the litigants' certainty of delay. *Id.* at 310.

MCR's argument about why the primary jurisdiction doctrine should be invoked involves the same events it said warranted the unpleaded affirmative defense of conflict preemption. It asks for invocation of the doctrine as an alternative to preemption. Because the Court has not considered MCR's conflict preemption argument, it will not exercise its discretion to invoke the primary jurisdiction doctrine. Further, MCR has made allegations in its motion to dismiss about the DOT inspector's actions and an investigation by the PHMSA, but has not provided the Court with supporting documentation about any investigation. This is another reason the Court chooses not to exercise its discretion to invoke the primary jurisdiction doctrine. That portion of MCR's motion asking the Court to invoke this doctrine is denied.

## Federal Rule of Civil Procedure 9(b)

Finally, MCR contends that WWS's fraudulent inducement counterclaim should be dismissed under Federal Rule of Civil Procedure 9(b). The rule provides that in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. FED. R. CIV. P. 9(b). A plaintiff alleging a state-law fraudulent inducement claim is subject to Rule 9(b)'s heightened pleading standard. *Hoffman v. L&M Arts*, 838 F.3d 568, 576 (5th Cir. 2016). Rule 9(b) requires a plaintiff pleading fraud to specify the statements contended to be fraudulent and explain why the statements were fraudulent. *Id.* at 576–77. The rule requires the complaint to set forth "the who, what, when, where, and how" of the events at issue. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008).

As alleged by WWS, MCR claims its tools use Class 4 non-explosive thermite-based fuel. MCR represents on its website that its fuel is a flammable solid that is non-explosive. WWS's counterclaim includes an image from MCR's website advertising its Radial Cutting Torch. The torch is said to sever tubing, casing, drill pipe, and coiled tubing "without the use of explosives or

8

hazardous materials, making it one of the safest pipe cutting tools on the market." WWS alleges it entered into the license agreement with MCR in reliance on MCR's representations as set out in its marketing materials and on its website. WWS alleges on information and belief that the pyrotechnic fuel actually used in MCR's tools is a dangerous explosive which could severely injure handlers. WWS alleges it would not have entered into the license agreement if it had known the truth.

MCR asserts WWS's claim fails because the advertisement on MCR's website was not an intentional representation made to any specific party. Nor does WWS allege any specifics regarding when or if this alleged misrepresentation was made by anyone at MCR to induce WWS to enter into the license agreement. The Court concludes that WWS's allegations satisfy the pleading requirements of Rule 9(b). WWS has identified specific statements, the source of the statements, and where they can be found—ongoing on MCR's website—and why they are allegedly false. *See, e.g., Wealth Masters Int'l, Ltd. v. Kubassek*, No. H-12-3421, 2013 WL 5516443, at *2 (S.D. Tex. Oct. 1, 2013); *TransFresh Corp. v. Ganzerla & Assocs.*, 862 F. Supp. 1009, 1019 (N.D. Cal. March 23, 2012). For all of the reasons set out above, the Court denies MCR's motion to dismiss.

**SO ORDERED.**

Signed March 24, 2022.

_____
ADA BROWN
UNITED STATES DISTRICT JUDGE